**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| JUSTIN BUNGER, | : | |
| Plaintiff, | : | |
| | | Case No. 3:08cv00275 |
| vs. | : | |
| | | District Judge Walter Herbert Rice |
| MICHAEL J. ASTRUE, | : | Magistrate Judge Sharon L. Ovington |
| Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

Plaintiff initially brought this case seeking judicial review, under the provisions of 42 U.S.C. § 405(g), of the Social Security Administration's decision to deny his application for Supplemental Security Income.  The Court previously remanded the case for further administrative proceedings, and the Clerk of Court entered Judgment in Plaintiff's favor and against the Commissioner.  (Doc. #s 19-21).

The case is presently before the Court on Plaintiff's Motion for Attorney Fees Under the Equal Access to Justice Act (EAJA) (Doc. #22), the Commissioner's Response (Doc. #24), and the record as a whole.  Plaintiff specifically seeks an award of attorney fees in the amount of $4,202.68, for 5.0 hours of work before the Court in 2008 at an hourly rate of $170.77 and 19.4 hours of work before the Court in 2010 and 2011 at an

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

hourly rate of $172.62. (Doc. #22 at 1).  The Commissioner contends that an award of EAJA attorney fees is not warranted in this case. (Doc. #24 at 1-3).  If Plaintiff is entitled to attorney fees, the Commissioner alternatively argues that the fees requested are excessive and any award granted should be paid directly to Plaintiff, instead of his counsel.  (Doc. #24 at 4-6).

The EAJA provides attorney fees to a party who prevails in a civil action against the United States "when the position taken by the Government is not substantially justified and no special circumstances exist warranting a denial of fees." *Bryant v. Comm'r of Soc. Sec.*, 578 F.3d 443, 445 (6th Cir. 2009) (citing 28 U.S.C. § 2412(d)(1)(A)).  In the present case, Plaintiff became the prevailing party when he obtained a reversal and remand for further administrative proceedings.  *See Shalala v. Schaefer*, 509 U.S. 292, 300-302 (1993).  The parties' dispute thus focuses on whether the Government's position in support of the ALJ's decision was substantially justified.  *See, e.g., Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541 (1988)

> A position is substantially justified when it is "'justified in substance or in the main' – that is, justified to a degree that could satisfy a reasonable person." *Pierce*, 487 U.S. at 565, 108 S.Ct. 2541.  Stated otherwise, a position is substantially justified when it has a "reasonable basis both in law and fact." *Id*.  The fact that . . . the Commissioner's position was unsupported by substantial evidence does not foreclose the possibility that the position was substantially justified.  *See id*. at 569, 108 S.Ct. 2541; *Jankovich v. Bowen*, 868 F.2d 867, 870 (6th Cir. 1989).  Indeed, "Congress did not . . . want the 'substantially justified' standard to 'be read to raise a presumption that the Government position was not substantially justified simply because it lost the case. . . .'" *Scarborough* [*v. Principi*, 541 U.S. 401, 415, 124 S.Ct. 1856, 1866 (2004)] (quoting *Libas, Ltd. v. United States*, 314 F.3d 1362, 1365 (Fed. Cir. 2003)).

*Howard v. Barnhart*, 376 F.3d 551, 554 (6th Cir. 2004).  The Government bears the

2

burden of establishing that its position was substantially justified. *Scarborough*, 541 U.S. at 414-15, 124 S.Ct. at 1865-66. In the present case, the Government argues that "[t]he Commissioner was substantially justified in defending this case because this Court found that this case should be remanded, not for payment of benefits but for further development." (Doc. #24 at 2). The Government contends that its position defending this case "was at least reasonable and substantially justified," despite noting the fact that this Court found "the ALJ did not properly weigh the physicians' opinions with respect to all the factors used for assessing medical source opinions," and that "the ALJ provided 'little analysis' of the mental health opinions in arriving at Plaintiff's mental limitations." (*Id.* at 3). The Government also argues its position to defend the ALJ's decision was substantially justified because the ALJ did not ignore the medical source opinions, even though the Court found "his analysis of the evidence fell short of what would be required to meet the substantial standards." (*Id.*). Plaintiff contends "[t]he ALJ did not act reasonably when he rejected the opinions supporting disability by treating and examining physicians, Dr. Lehner, Dr. Ratliff, and Dr. Geisel, since there is a complete failure to evaluate the consistency of these opinions, one with the other, as required." (Doc. #22 at 3).

   Although the ALJ may not have entirely ignored all medical source opinions, such a fact does not provide the Government with substantial justification for supporting an ALJ's decision that is inconsistent with Social Security Regulations, Rulings, and relevant case law – especially where, as in this case, it is clear the ALJ did not properly weigh the physicians' opinions nor provide more than a very limited analysis of the

mental health opinions regarding Plaintiff's mental limitations. The Court previously explained:

> [T]he ALJ's application of the required criteria to the medical source opinions and his failure to apply the required criteria to the opinions of Dr. Rath is problematic and, ultimately, not supported by substantial evidence.
>
> Beginning with Dr. Rath, the ALJ based his assessment of Plaintiff's residual functional capacity primarily on Dr. Rath's opinions. In doing so the ALJ found that Dr. Rath's opinions represented "a credible estimation of the claimant's capabilities and a realistic compromise of the various assessments of the claimant's functional capacity provided by treating, examining, and evaluating medical sources." (Tr. 33). The ALJ did not, however, apply any of the required legal criteria – such as supportability, consistency, and specialization – to Dr. Rath's opinion. This constituted a failure to apply the correct legal criteria because the Regulations and Rulings required the ALJ to weigh the opinions of one-time examining physicians and record-reviewing physicians under the regulatory factors such as supportability, consistency, and specialization. *See* 20 C.F.R. §419.927(d), (f); *see also* Social Security Ruling 96-6p, 1996 WL 374180 at *2. The Regulations appear to emphasize this requirement by reiterating it no less than three times. *See* 20 C.F.R. §416.927(d) ("we consider all of the following factors in deciding the weight to give any medical opinion...."); *see* also 20 C.F.R. §416.927(f)(ii) (factors apply to opinions of state agency consultants); 20 C.F.R. §416.927(f)(iii) (same as to medical experts' opinions); Social Security Ruling 96-6p, 1996 WL 374180 at *2 (same).
>
> Ruling 96-6p reinforces this:
>
> The Regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker. For example, the opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources.
>
> For this reason, the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Councils levels

4

>that was not before the State agency, the consistency of the opinion
>with the record as a whole, including other medical opinions, and
>any explanation for the opinion provided by the State agency
>medical or psychological consultant or other program physician or
>psychologist.  The adjudicator must also consider all other facts that
>could have a bearing on the weight to which an opinion is entitled,
>including any specialization of the State agency medical or
>psychological consultant.

Soc. Sec. R 96-6p, 1996 WL 374180 at *2.

In light of the above authority, the ALJ's failure to apply any of the required regulatory factors was no minor error; instead it was essential because Dr. Rath provided no meaningful explanation in support of his opinions, *see* Tr. 186-90, and because he reviewed the file in May 2003 – before the record contained evidence and opinions concerning Plaintiff's fibromyalgia and its impact on his work abilities.

Plaintiff's primary care physician, Dr. Ratcliff, and his treating orthopedist, Dr. Lehner, both found limitations inconsistent with an ability to sustain even sedentary work on a regular and continuing basis.  *See* Tr. 317-21, 357-61.  Dr. Ratcliff based his opinion on Plaintiff's muscle pain, trigger points, and examination at the Cleveland Clinic.  *See* Tr. 357.  Dr. Lehner cited to the degenerative disc disease at L4-5 and L5-S1 documented on MRI to support his findings.  *See* Tr. 317.  These physicians thought that Plaintiff could not lift more than 5-10 pounds.  *See* Tr. 318, 358.  Both felt that Plaintiff would likely miss work more than 3 times a month due to his impairments.  *See* Tr. 321, 361.

In addition, Dr. Giesel, who completed interrogatories in May 2005, more recently than Dr. Rath, did not think Plaintiff could perform more than sedentary work.  While she thought he could perform such work for 40 hours per week, she was not asked how often Plaintiff was likely to miss work.  (Tr. 394).

The ALJ rejected all three of these opinions.  He asserted that Dr. Lehner and Dr. Ratcliff reached their conclusions "based on uncritical acceptance of the claimant's subjective complaints and allegations."  (Tr. 31).  Dr. Lehner, however, who had treated Plaitniff since age 12 for his significantly degenerative spine relied on MRI evidence.  The MRI showed significant degenerative changes and multiple levels from L2 through S1.  At L3-4 and L5-S1, bulging discs neared the nerve roots; at L4-5 the bulging disc clearly touched the nerve root before it existed the neural foraminal.  (Tr. 246).  Dr. Lehner noted that the disc changes seen on the MRI were more common in a forty-year old spine.  (Tr. 245).  Dr. Ratcliff, moreover, not only relied on the degenerative changes but also relied on

5

the evidence (e.g., tender points) of Plaintiff's fibromyalgia, an aspect of the case that the ALJ did not meaningfully consider or address.

The ALJ noted that Dr. Giesel clearly based her opinion on Plaintiff's subjective pain complaints. (Tr. 32). Dr. Giesel's report, however, specifically notes the various exhibits that document the various medical conditions of record, including fibromyalgia, obesity, degenerative disc disease, and chronic pain syndrome. *See* Tr. 394.

Completely missing from the ALJ's decision is the consistency of these opinions – one with the other – one of the factors that must be considered in evaluating treating physician and other medical source opinion. *See* 20 C.F.R. § 416.1927(d). Further, while the ALJ dismisses Dr. Giesel's opinion in part because she had no treatment or examining relationship with the claimant (Tr. 32), he fails to note that the reviewing Ohio BDD physician, Dr. Rath, upon whose opinion he relied, also had no treatment or examining relationship with Plaintiff. *See* Tr. 33. The opinions of a state agency medical source generally deserve less weight than that of examining physicians who had access to the entire medical record. *See* Soc. Sec. Ruling 96-6p, 1996 WL 374180 at *2 (In analyzing the supportability of a state agency physician, the ALJ must consider whether he or other physicians had access to evidence that was not available to the state agency physician).

Turning to Plaintiff's mental work abilities, the ALJ found that Plaintiff's only mental limitation was an inability to work with the general public. *See* Tr. 36. In reaching this finding, the ALJ provides little analysis of the mental health opinions of record, including that of the consultative examiner, Dr. Trevino, and the opinions of Drs. Lehner and Ratcliff. *See generally* Tr. 33-36.

Dr. Trevino found significant limitations on Plaintiff's mental work abilities. Specifically, he noted that Plaintiff would have difficulty with social interaction. He also noted that Plaintiff was "in constant pain" and therefore was unable to interact in a social manner. He quickly becomes exhausted to the extent that he has difficulty raising or lifting his arms and walking. He indicates at times he feels so exhausted that he cannot move and his emotions take over and he can cry up to 45 minutes non-stop. He relates that this has happened on at least two occasions in the school environment which has caused him considerable stress and embarrassment. (Tr. 259). Because of his problems, Dr. Trevino did not think Plaintiff would be able to tolerate stress either in the home or at a work related environment. Dr. Trevino diagnosed major depression, recurrent, and severe. (Tr. 260).

In other words, Dr. Trevino diagnosed a much more significant impairment

6

on Plaintiff's mental work abilities than the ALJ found. Dr. Trevino's opinion is not inconsistent with the treatment record from Dr. Wade. Indeed, from July 2004 through March 2007 (when Dr. Wade left the practice) the record documents approximately 80 counseling sessions, with the bulk of these sessions dealing with Plaintiff's focus on his chronic pain. *See* Tr. 432-74, 571-614. The ALJ overlooked or ignored the fact that Plaintiff's pain resulted in limitations on his ability to perform the mental demands of work on a sustained basis, as documented by Plaintiff's treating physicians. Dr. Lehner specifically thought Plaintiff's pain would interfere with his ability to perform many of the mental demands of work, such as being prompt and regular in attendance, because he could not do anything very quickly and he had days where he just hurt tremendously. Dr. Lehner did not think that Plaintiff had the coordinative skills to work with other people because he was so focused on his back pain. (Tr. 325). Dr. Lehner also thought that pain would get in the way of Plaintiff's ability to maintain concentration and attention for extended periods of time. (Tr. 328, 333). Likewise, Dr. Lehner believed that Plaintiff's ability to complete normal workday and workweek without interruption from psychologically and physically based symptoms would be affected by pain. *Id*.

Dr. Ratcliff reached similar conclusions. He noted that the interplay between fibromyalgia, depression, and low back pain resulted in significantly greater impairment then any condition alone. (Tr. 364). Dr. Ratcliff felt that Plaintiff's pain would interfere with his ability to perform many of the mental demands of work on a sustained basis. (Tr. 365-70).

The ALJ's decision also provides no reason for rejecting the opinions of Dr. Trevino. While Dr. Trevino was not a treating physician, his opinion required analysis under the regulations. 20 C.F.R. § 416.927(d). At best, the ALJ substituted his own lay review of the medical evidence for that of the medical experts. This constitutes error. "[A]n ALJ must not substitute his own judgment for a physician's opinion without relying on other evidence or authority in the record." *Clifford v. Apfel*, 227 F.2d 863, 870 (7th Cir. 2000); *see Rosa v. Callahan*, 168 F.3d 72, 78-79 (2nd Cir. 1999) ("[T]he ALJ cannot arbitrarily substitute his own opinion for competent medical opinion").

Accordingly, Plaintiff's contentions are well taken.

(Doc. #19 at 20-26).

Although a "reversal of the denial of benefits and a remand for clarification does not automatically mean the Commissioner's decision to defend the ALJ's decision was

7

unreasonable," *Anderson v. Commissioner of Social Sec.*, 1999 U.S. LEXIS 29996 at *13 (6th Cir. 1999); *see Howard*, 376 F.3d at 554, the significance of the ALJ's error in failing to properly weigh the physicians' opinions, as well as the lack of a proper analysis of mental health opinions of record, deprive the Government's defense of the ALJ's decision of a reasonable basis in fact and law. The Commissioner, therefore, has not met his burden of establishing that his support for the ALJ's decision was substantially justified or that an EAJA award to Plaintiff will be unjust. *Howard*, 376 F.3d at 554 ("Under the circumstances of this case, where the administrative law judge was found to have selectively considered the evidence in denying benefits, we hold that the Commissioner's decision to defend the administrative law judge's denial of benefits is without substantial justification.").

  Accordingly, Plaintiff is entitled to an EAJA award.

  Although Plaintiff is entitled to an EAJA award, the Government argues that "his EAJA petition requests fees that are not reasonable." (Doc. #24 at 4). The Government notes that "Plaintiff's counsel seeks to charge the government for a total of 24.40 hours of work, which includes 4.30 hours for pre-litigation review and various tasks with respect to preparing the complaint," and that "[t]his time seems excessive in light of the fact that Plaintiff's counsel['s] firm was extensively involved in the administrative proceedings and had represented Plaintiff since 2004." (*Id.* at 5). The Government also argues the case "was a relatively routine, disability case. The issues involved the ALJ's weighing of the evidence and evaluation of impairments. These issues are typically seen in Social Security Disability cases that reach district court." (*Id.*).

8

Upon review of the time sheet submitted by Plaintiff's counsel, the Court finds the entry of 1 hour related to the Complaint completed on 7/29/2008 to be excessive. (Doc. #22-1 at 1). Plaintiff's Complaint appears to derive from a form with the significant information added. Counsel's billing entry states, "CREATE: Complaint to SSA Commissioner, civil cover sheet and 4 summons." (*Id.*). It was not reasonable for such an experienced and knowledgeable attorney to spend one full hour performing such work when ½ hour would have reasonably sufficed. Accordingly, the number of hours Plaintiff requests for work performed in 2008 must be reduced by ½ hour. *Cf. Davenport v. Astrue*, 2008 WL 2691115 at *8 (N.D. Ind. 2008) (attorney may not obtain fees for time spent on clerical tasks). No other amount of time listed appears excessive, nor has the Government otherwise challenged the reasonableness of any specific entry on the time sheet.

An additional issue remains that must be addressed by this Court: Plaintiff's counsel seeks to increase the $125 hourly rate set by Congress in 1996 to $170.77 per hour for work performed in 2008, and $172.62 per hour for work performed in 2010 and 2011. Counsel states that "[a]ttached is information from the United States Department of Labor showing the increases in cost of living in this area since March, 1996 totaling 36.6% as of 2008, making the hourly rate $170.77 for hours in 2008, and 38.09% as of 2010 making the hourly rate $172.62 for hours in 2010." (Doc. #22 at 3). Attached to Plaintiff's Motion is also a list of the services Plaintiff's counsel performed in this case, adding up to 24.40 hours of attorney work. (Doc. #22-1 at 1-2).

"In requesting an increase in the hourly-fee rate, Plaintiffs bear the burden of

9

producing appropriate evidence to support the requested increase. Plaintiffs must 'produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Bryant*, 578 F.3d at 450 (internal citation omitted). "In accordance with the Sixth Circuit decision in *Bryant*, the submission of the Consumer Price Index, standing alone, is insufficient to satisfy the burden of proving that the higher hourly rate requested by counsel is justified." *Douglas v. Astrue, Commissioner of Social Sec.*, 2012 WL 931100 at *2 (S.D. Ohio, March 19, 2012)(Rice, D.J.). Counsel has offered no affidavit or other evidence showing that the requested rate is "'in line with those prevailing in the community for similar services offered by lawyers of reasonably comparable skill, experience, and reputation . . . .'" *Id*. (quoting *Bryant*, 578 F.3d at 450). Plaintiff's counsel, therefore, has not met his burden of showing that the increase he requested in the statutory cap of $125 per hour is warranted. *See id*.

Accordingly, Plaintiff is entitled to an EAJA award of attorney fees calculated as follows: 23.90 (hours of attorney work, including ½ hour reduction) x $125 = $2,987.50.

Plaintiff's counsel requests payment of an EAJA award directly to him, and has attached an assignment of fees from Plaintiff. (Doc. #22-1 at 3). Defendant argues payment of any fees awarded should not be made directly to Plaintiff's counsel, and that "the government will evaluate the propriety of directing payment to the attorney pursuant to an assignment after the award has been made." (Doc. #24 at 5). Defendant's opposition is based on *Ratliff v. Astrue*, __ U.S. __, 130 S.Ct. 2521, 2524 (2010), in

10

which the Court held that a "§2412(d) fees award is payable to the litigant and is therefore subject to a Government offset to satisfy a pre-existing debt that the litigant owes the United States." In so holding, the Court recognized that historically the Commissioner paid EAJA fees directly to a prevailing plaintiff's attorney. __ U.S. at __, 130 S.Ct. at 2528-29. The Court further noted that, based on the record before it, "the Government has since continued the direct payment practice only in cases where the plaintiff does not owe a debt to the [G]overnment and assigns the right to receive the fees to the attorney." *Id.* at 2529 (internal quotation marks omitted).

  Although Defendant notes it will review whether to directly pay an award to Plaintiff's counsel after an award has been made, it has not placed into the record at this time any evidence tending to show that Plaintiff, in fact, owes a pre-existing debt to the United States that might cause his EAJA award to be subject to an offset under *Ratliff*. As the Defendant effectively acknowledges that it does not know whether Plaintiff owes a pre-existing debt to the federal government at this time, no ripe *Ratliff* issue currently exists. This conclusion is confirmed by *Ratliff* itself, where the government sought an EAJA offset based on its knowledge that the plaintiff owed it a debt that pre-dated the district court's approval of the EAJA award. 130 S.Ct. at 2424-25. In the present case, the Commissioner appears to lack such knowledge, and accordingly, there is no ground for the Commissioner to avoid or delay honoring Plaintiff's assignment of his EAJA fees to counsel. *Cf. Ratliff*, __ U.S. at __, 130 S.Ct. at 2530 ("the litigant's obligation to pay her attorney is controlled not by the EAJA but by contract and the law governing that contract.") (Sotomayer, J., concurring).

11

**IT IS THEREFORE RECOMMENDED THAT:**

1. Plaintiff's Motion for Attorney Fees Under the Equal Access to Justice Act (Doc. #22) be GRANTED, in part, to the extent Plaintiff is entitled to an EAJA award in the total amount of $2,987.50.  Plaintiff's Motion for an EAJA award totaling $4,202.68 should be DENIED;

2. Defendant be directed to verify, **within twenty-one days of an Order adopting this Report and Recommendations**, whether or not Plaintiff owes a pre-existing debt to the United States subject to offset.  If no such pre-existing debt exists, Defendant be ordered to pay the EAJA award directly to Plaintiff's counsel; and,

3. The case remains terminated on the docket of this Court.

May 21, 2012                                                                   s/Sharon L. Ovington
                                                                        Sharon L. Ovington
                                                                        United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).